UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CONSTRUCTION AND GENERAL
LABORERS' LOCAL 185,

        Petitioner,

    v.

SEVEN-UP BOTTLING CO. OF
SAN FRANCISCO, DR. PEPPER
SNAPPLE GROUP, INC., and
DOES 1 through X, inclusive,

        Respondents.
_____/

NO. CIV. S-10-2358 LKK/DAD

O R D E R

    Plaintiff, a labor union, has filed a petition to compel arbitration. Respondent opposes the petition and has filed a motion to dismiss the petition.

**I. Background**

    Petitioner Construction and General Laborers' Local 185 ("the Union") is a labor organization that represents certain employees of respondents Seven-up Bottling Co. of San Francisco ("the Employer") and Dr. Pepper Snapple Group, Inc. ("Dr. Pepper"). The petitioner and respondent are parties to a collective bargaining

1

agreement that governs the terms of employment for members of Local 185 who work for respondent. Article XVIII of the collective bargaining agreement outlines the procedure to be followed in the event that a grievance arises "out of a condition which occurs during the term of th[e] agreement and involves the interpretation, application, or compliance with an express provision or provisions of th[e] agreement." Pl.'s Ex. A at 14, ECF No. 1-1. The Article provides for a four-step grievance procedure, the fourth step of which is arbitration by an arbitrator from a list provided by the American Arbitration Association. Article XVIII(D) provides "the grievance and arbitration procedures are intended to be the sole and exclusive means of resolving any dispute subject to the grievance procedure . . ." The agreement requires that the party seeking to invoke the arbitration clause "shall, within twenty (20) days of the date when Step Three was invoked, serve upon the other party . . . a written demand for arbitration, in respect to said grievance." Id.

On May 12, 2009 petitioner filed a grievance in accordance with step one of the grievance procedure. The grievance asserted unjust termination and discrimination of employee/member Susan Nix. The union sought to have Ms. Nix reinstated to her position with back pay. Pl.'s Ex. B at 1, ECF No. 1-2. The parties proceeded through steps two and three of the procedure without resolving the grievance. On August 27, 2009 a four-member grievance panel met to hear the grievance pursuant to step three of the grievance procedure. The panel deadlocked and the minutes of the panel's

meeting reflect that the matter would proceed to arbitration. Ex. A to Decl. of J. McKnight at 6, ECF No. 13-1. Meanwhile, two other grievances proceeded through steps one, two, and three of the grievance procedure, at which point the grievance panel rendered decisions in favor of those employees. Petitioner filed an action in San Francisco Superior Court to enforce the grievance panel's favorable decisions in those matters. The parties then agreed to arbitrate all three grievances rather than pursue the state court action. The other grievances were settled shortly thereafter, but the parties were unable to reach any resolution on the Nix matter. According to declarations filed by the petitioner, the union's business agent Juan McKnight continued to attempt to settle the Nix matter with the respondent until July 27, 2010, when respondent's counsel informed petitioner's counsel that respondent was no longer willing to arbitrate the matter. Decl. of C. Lozano-Batista at 2, ECF No. 13-3. Respondent alleges that it received no communication from the petitioner regarding the grievance after the panel hearing on August 27, 2009. Opp'n to Pet. to Compel Arbitration at 6, ECF No. 11. Respondent cites the Decl. P. Alonzo, but that declaration states that Ms. Alonzo, the employer's human resources representative did not receive a written demand for arbitration.

   Petitioner filed a petition to compel arbitration on September 1, 2010. ECF No. 1. Respondent has filed an opposition to the petition to compel arbitration (ECF No. 11), and also a motion to dismiss the petition (ECF No. 7). Respondent also filed a supplemental opposition to the petition to compel arbitration (ECF

3

No. 15), which petitioner has moved to strike as redundant and untimely (ECF No. 17).

## II. Standard

### A. Standard for a Motion to Dismiss

A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. Id. at 1949-50. Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." Id.; Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the

4

allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

### B. Standard for a Motion to Compel Arbitration

A petition to compel arbitration should be granted unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co. 363 U.S. 574, 577 (1960).

There is a strong presumption in favor of arbitration of labor disputes. Id. In ruling on a motion to compel, a district court must only decide whether the issue is within the scope of the arbitration clause. "[A district court considering a motion to compel arbitration] is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." United

Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 566 (U.S. 1960).

### III. Analysis

**A. Respondent's motion to dismiss the petition to compel arbitration**

Respondent's 12(b)(6) motion alleges that the petition to compel arbitration is time barred by the six-month statute of limitations applicable to petitions to compel arbitration. In considering respondent's motion to dismiss the petition, the court takes petitioner's non-conclusory factual allegations as true, and determines whether those facts plausibly give rise to a claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

**i. Petitioner's motion is not plainly barred by the statute of limitations.**

The petition to compel arbitration was brought pursuant to 29 U.S.C. § 185 (LMRA § 301), which grants the district courts jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). This section does not provide a statute of limitations for such suits, but the Ninth Circuit has held that

> "29 U.S.C. § 160(b), which prescribes a 6 month limitation for making charges of unfair labor practices to the national Labor Relations Board, is applicable, by analogy or 'borrowing' to the filing of a petition in court to compel arbitration of a dispute under a collective bargaining agreement, at least where the arbitration would relate to matters such as involved in this case."

6

1  Teamsters Union Local 315 v. Great Western Chemical Co.,
2 781 F.2d 764, 769 (1986). That case involved a union's petition
3 to compel arbitration of a grievance protesting the discharge of
4 an employee. Respondent is correct that the six-month statute of
5 limitations is therefore also applicable in the case at bar,
6 where the arbitration relates to similar matters.

7  Respondent contends that the petitioner is "between a rock
8 and a hard place regarding the timing of its claim." Opp'n to
9 Pet. to Compel at 2. Respondent argues that the combination of
10 the collective bargaining agreement's 20-day demand provision
11 and the six month statute of limitations render petitioner's
12 claim time-barred. The clock on the twenty-day provision
13 (requiring that a written demand for arbitration be made within
14 20 days of the completion of step three of the grievance
15 procedure) began ticking on August 27, 2009, when the grievance
16 panel deadlocked. Respondent claims that the six-month statute
17 of limitations period also began to run on that date.

18  Petitioner correctly points out, however, that the statute
19 of limitations period does not begin to run the moment that the
20 union has the right to demand arbitration. Rather, it begins
21 when the employer makes a clear refusal to arbitrate. In
22 Teamsters Union Local 315 v. Great Western Chemical Co. cited by
23 respondents to support the application of the six-month statute
24 of limitations to this case, the Ninth Circuit clearly held that
25 the six month period of limitation would run from the time "it
26 was made clear by the Employer to the Union that the Employer

7

1  would not submit the matter to arbitration." 781 F.2d at 769.
2  The Ninth Circuit explained what it means for an employer to
3  make it clear that it is unwilling to arbitrate in <u>Local Joint</u>
4  <u>Executive Bd. V. Exber, Inc.</u> 994 F.2d 674 (9th Cir. 1993),
5  holding "for an employer to 'make it clear' that it refuses to
6  arbitrate and, therefore to start the statute of limitations
7  running, an unequivocal, express rejection of the union's
8  request for arbitration must be communicated to the union.
9  Constructive notice is not sufficient." <u>Id.</u> at 676. Respondent,
10 in its rock-and-hard-place analogy, ignores the window of time
11 in between twenty days from the grievance panel's hearing and
12 the time that the employer makes it clear that it is unwilling
13 to arbitrate the matter.
14     In this case, petitioner has alleged facts showing that
15 during the time between August 27, 2009 and July 27, 2010, it
16 had ongoing communications with the employer, including an
17 agreement to arbitrate memorialized in the minutes of the panel
18 hearing held on August 27, 2009 (Pet'r's Mem. Of Points and
19 Authorities in Supp. of Pet. to Compel Arbitration at 2, ECF No.
20 1-3), and a verbal agreement to arbitrate Ms. Nix's grievance
21 alongside two other grievances (Opp'n to Resp't's Mot. to
22 Dismiss at 2, ECF No. 13). Petitioner has also asserted that it
23 was not made clear by the employer that the employer was
24 unwilling to arbitrate the matter until July 27, 2010. <u>Id.</u> at 3.
25 Respondent has not asserted any facts indicating that it made
26 its unwillingness to arbitrate clear to the union on any earlier

8

date, but instead insists that the statute of limitations began running on August 27, 2009 when the union's right to demand arbitration under the collective bargaining agreement accrued.

Construing the facts most favorable to the petitioner, it appears that the statute of limitations began to run on July 27, 2010 when the employer made clear to the union that it was unwilling to arbitrate. The petition to compel arbitration was therefore timely when it was filed with this court on September 1, 2010. Accordingly, respondent's motion to dismiss for failure to state a claim, ECF No. 7, is DENIED.

**B. Petitioner's Motion to Compel Arbitration**

Petitioner seeks a motion to compel arbitration of a grievance related to the termination of Susan Nix. The existence of a valid arbitration clause in the collective bargaining agreement between the parties is not disputed. Under the collective bargaining agreement, arbitration is the fourth and final step of the procedure to resolve grievances that arise under the agreement. This grievance procedure, including arbitration, is to be used to resolve any dispute that "involves the interpretation, application, or compliance with an express provision or provisions of th[e] agreement." Pl.'s Ex. A at 14, ECF No. 1-1. Petitioner asserts the grievance regarding Ms. Nix's termination is covered by the arbitration clause, as are any procedural issues related to the grievance itself, such as whether or not the prior steps of the grievance procedure have been fulfilled. In opposition, the respondent argues that the

9

1  petition is barred by the statute of limitations and laches.
2  Alternatively, respondents request additional time to conduct
3  discovery on the question of "whether and when Petitioner first
4  made a request for arbitration." Opp'n to Pet. to Compel
5  Arbitration at 1, ECF No. 11.

6  **i. The Statute of Limitations**

7  Respondent's opposes the petition to compel arbitration as
8  time-barred by the statute of limitation. Respondent claims that
9  the petitioner's claim arose on August 27, 2009 at the
10 conclusion of the grievance panel hearing. However, the minutes
11 of that hearing reflect that at that time, the respondent was
12 not refusing to arbitrate. To the contrary, the minutes state:
13 "The panel deadlocks and the matter will go to arbitration." The
14 minutes reflect that representatives for respondent, including
15 Human Resources Manager Paula Alonzo, were present at the panel
16 hearing. Ex. A to Decl. J. McKnight at 6, ECF No. 13-1.
17 Respondent has not alleged any other date on which it
18 unequivocally refused to arbitrate the matter, and as noted
19 above, has ignored Ninth Circuit authority that establishes that
20 the statute of limitations begins to run when such an
21 unequivocal refusal is made. See, e.g., Local Joint Executive
22 Bd. V. Exber, Inc. 994 F.2d 674 (9th Cir. 1993), *supra*.
23 Petitioner's claim is not time-barred by the statute of
24 limitations.
25 ////
26 ////

**ii. Laches**

Respondent raises the defense of laches, asserting that petitioner unreasonably delayed seeking arbitration after the grievance panel deadlocked on August 27, 2009. Respondent claims that "[p]etitioner has unreasonably delayed in pursuing arbitration for over a year now, and cannot now compel it," and further that "petitioner makes no claim and alleges no facts supporting a position that it was unaware of Seven-Up Bottling's conduct giving rise to its claim." Opp'n to Pet. to Compel at 5. As already discussed above, the conduct that gave rise to petitioner's claim did not occur on August 27, 2009, as respondent asserts, since respondent was not refusing to arbitrate at that time. Respondent cites two cases, neither of which are binding on this court nor helpful to the defendant's argument. Both are Sixth Circuit cases dealing with the laches defense in the context of a petition to compel arbitration. In Amalgamated Clothing Workers of Am. v. Ironall Factories Co., 386 F.2d 586 (1967), the court found inexcusable a delay by the union in notifying the employer of a dispute over wages. In that case, laches barred the union's claim not merely because of a more-than-one year delay, but also because the employer's business was sold in the intervening time period and the delay was thus detrimental to the employer's ability to mount a defense. In International Union v. Cummins, 434 F.3d 478 (6th Cir. 2006), also cited by the respondent, the court found *excusable* a two-and-a-half year delay in moving to compel

11

1  arbitration. During that time period, the union and the employer
2  communicated numerous times about the dispute, and the court
3  found the delay to be warranted. In an attempt to distinguish
4  Cummins from the case at bar, respondent asserts that
5  "petitioner does not explain what occurred in the year between .
6  . . August 27, 2009 and the date it finally filed the Petition,
7  September 1, 2010," (Opp'n to Pet. to Compel Arbitration at 6).
8  To the contrary, petitioner has alleged that it discussed
9  arbitration of the grievance with the employer during that time
10 period. For example, it asserts that the union and the employer
11 made a verbal agreement that the union would dismiss a case it
12 had filed in superior court and arbitrate Ms. Nix grievance as
13 well as two other grievances filed on behalf of other employees.
14      It is understandable that the respondent would cite Sixth
15 Circuit authority for its laches defense, since in the Ninth
16 Circuit, the "defense of laches is for the arbitrator to
17 decide." Local Union No. 370 of the International Union of
18 Operating Engineers v. Morrison-Knudsen Co., 786 F. 2d 1356 (9th
19 Cir. 1986) (citing International Union of Operating Engineers v.
20 Flair Builders, Inc. 406 U.S. 487 (1972)). See also Auto Marine
21 & Specialty Painters v. Bay Area Sealers, Inc. 577 F. 2d 609
22 (1978)(per curiam)("The Court held that a broad arbitration
23 clause requiring the parties to arbitrate 'any difference'
24 included the defense of laches.").
25      Moreover, this case fits squarely within the Supreme
26 Court's holding in International Union of Operating Engineers v.

12

1  Flair Builders, Inc. 406 U.S. 487 (1972). In that case, the
2  Court held that an agreement to arbitrate "any
3  difference...between the parties," includes an agreement to
4  arbitrate the issue of laches. "In that circumstance, we must
5  conclude that the parties meant what they said–that 'any
6  difference,' which could include the issue of laches raised by
7  respondent at trial, should be referred to the arbitrator for
8  decision." Id. at 491. This holding preserves the benefits of
9  the bargain struck by the union and the employer. The collective
10 bargaining agreement in the instant case includes a broad
11 arbitration clause: "The grievance and arbitration procedures
12 are intended to be the sole and exclusive means of resolving any
13 dispute subject to the grievance procedure..." The grievance
14 procedure applies to complaints "arising out of a condition
15 which occurs during the term of this agreement and involves the
16 interpretation, application or compliance with an express
17 provision or provisions of this agreement." Art. XVII, ECF No.
18 1-1. Thus, the Supreme Court's holding in Flair Builders that
19 laches is a matter for the arbitrator to decide, applies here.
20     Accordingly the petition to compel arbitration is not
21 barred by laches.
22     **iii. Arbitrability of Petitioner's Grievance**
23     The grievance related to Ms. Nix's termination is clearly
24 one that "arises out of a condition which occurs during the term
25 of th[e] agreement and involves the interpretation, application,
26 or compliance with an express provision or provisions of th[e]

13

agreement," and is subject to the arbitration clause. Specifically, the grievance involves the interpretation of Article XVII of the collective bargaining agreement which governs discharge of employees. Respondent asserts that the claim is not arbitrable if the petitioner "failed to comply with the C[ollective] [B]argaining [A]greement" by making a request for arbitration within twenty days of completion of step three of the grievance procedure." Resp't's Opp'n at 2. Respondent requests that the court delay ruling on the petition in order to give respondent an opportunity to conduct discovery on whether and when Petitioner first made a request for arbitration.

    The question of "whether procedural prerequisites, which, under the bargaining agreement, condition the duty to arbitrate have been met," is a question for the arbitrator to resolve. John Wiley & Sons, Inc. V. Livingston, 376 U.S. 543 (1964). "Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Id. at 557. The holding in Wiley is consistent with the strong presumption, established by the Supreme Court in the Steelworker Trilogy, in favor of resolving labor disputes through arbitration. "The present federal policy is to promote industrial stabilization through the collective bargaining agreement. A major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the

14

collective bargaining agreement," since an agreement by the employer to submit to arbitration is the quid pro quo for the union's agreement not to strike. United Steelworkers of America v. Warrior & Gulf Navigation Co. 363 U.S. 574, 577 (1960).

The procedural question in Wiley was whether steps one and two of a three-step grievance procedure had been followed by the union. The employer contended that they had not, and that there was therefore no duty on the employer to proceed to step three, arbitration. The Court concluded that the question of whether the union had followed the proper procedures to invoke the employer's duty to bargain, was itself an arbitrable question.

Here, the employer contends that it needs additional time for discovery on the issue of whether the union complied with the provisions of the collective bargaining agreement that lead to arbitration. The court concludes that this procedural question is one for the arbitrator.

Accordingly, the petition to compel arbitration is GRANTED.

**C. Petitioner's Motion to Strike the Respondent's Supplemental Opposition to the Petition to Compel Arbitration.**

Respondent filed a Supplemental Opposition to the Petition to Compel Arbitration on November 22, 2010. ECF No. 15. Petitioner has moved to strike the supplemental opposition on the basis that it is untimely and redundant. In the supplemental opposition and the attached declaration, the respondent elaborates on its need to conduct discovery in order to support its laches defense.

15

1    Petitioners did not stipulate to supplemental briefing and
2 this court did not order it. Accordingly, petitioner's motion to
3 strike the supplemental opposition, ECF No. 17 is GRANTED.
4    **D. Attorneys Fees**
5    Petitioner requests attorneys's fees pursuant to California
6 Labor Code § 1128. That section directs courts to award
7 attorneys fees to a party to a collective bargaining agreement
8 who prevails in a court action to compel arbitration "unless the
9 other party has raised substantial and credible issues involving
10 complex or significant questions of law or fact regarding
11 whether or not the dispute is arbitrable under the agreement."
12 Id. Petitioner, however, is not entitled to fees under the
13 California Labor Code, since "the court applies federal law in §
14 301 cases." McKesson Corp. v. Chauffeurs, Teamsters, & Helpers
15 Local Union No. 150, 795 F. Supp. 338, 343 (E.D. Cal.
16 1991)(Shubb). This petition to compel arbitration was brought
17 under § 301 of the Labor Management Relations Act, and federal
18 law applies.
19    Under federal law, attorney's fees are available in a § 301
20 case when "a party frivolously or in bad faith refuses to submit
21 a dispute to arbitration or appeals from an order compelling
22 arbitration." UFCW Locals 197 & 373 v. Alpha Beta Co., 736 F.2d
23 1371, 1383 (9th Cir. 1984). Awarding attorneys' fees in this
24 context is necessary in order to further the goal of industrial
25 peace through arbitration. "Engaging in frivolous dilatory
26 tactics not only denies the individual prompt redress, it

16

1  threatens the goal of industrial stabilization." <u>International</u>
2  <u>Union of Petroleum & Industrial Workers v. Western Industrial</u>
3  <u>Maintenance, Inc.</u>, 707 F.2d 425, 428 (9th Cir. 1983). <u>See also</u>
4  <u>Fed'n of Agents & Int'l Representatives v. United Food &</u>
5  <u>Commercial Workers</u> 2001 U.S. App. LEXIS 7773 (9th Cir.
6  2001)("[B]ecause of federal policy favoring arbitration, we have
7  applied a less demanding–"without justification"–standard in
8  cases involving refusals to arbitrate.)

9      The court looks to whether the employer was without
10 justification in refusing to arbitrate. Because "the threat of
11 an award of attorneys' fees tends to deter frivolous dilatory
12 tactics" and thus promote the federal policy favoring
13 arbitration, <u>Petroleum & Industrial Workers</u>, 707 F. 2d at 428,
14 courts look to the conduct of the employer "that led to the
15 lawsuit" in the first place, or in "conduct occurring in the
16 course of action." <u>Id.</u> An award of fees is appropriate when "a
17 defendant's obstinancy in granting a plaintiff his clear rights
18 necessitated resort to legal action with all the expense and
19 delay entailed in litigation." Id. at 428 (quoting <u>Huecker v.</u>
20 <u>Milburn</u>, 538 F.2d 1241 (6th Cir. 1976)).

21     In this case, petitioner urges the court to award
22 attorneys' fees because "the Employer has no colorable basis for
23 refusing to arbitrate the underlying grievance and requesting
24 discovery in this matter. Such a refusal to arbitrate is
25 disruptive to labor relations and calculated to delay an
26 amicable resolution of a legitimate labor dispute." Pet.'r's

17

Reply at 10, ECF No 14. The court agrees. The respondent's duty to arbitrate the Nix grievance, including any procedural matters related to the grievance is straightforward. In the course of the instant action, the respondent has not asserted a single justification for its refusal to arbitrate other than procedural issues which are themselves subject to arbitration. Under long-standing Supreme Court and Ninth Circuit case law, the presumption in favor of arbitrability of such matters is unequivocal. The respondent's refusal to arbitrate the matter is without justification, and petitioner's request for attorneys' fees is GRANTED.

### IV. Conclusion

For the reasons stated herein, the court ORDERS as follows:

[1] Petitioner's motion to compel arbitration, ECF No. 5 is GRANTED.

[2] Respondent's motion to dismiss for failure to state a claim, ECF No. 7, is DENIED.

[3] Petitioner's motion to strike respondent's supplemental opposition, ECF No. 17 is GRANTED.

[4] Respondent shall pay petitioner reasonable attorneys' fees. Within seven (7) days of the issuance of this order, petitioner shall file a declaration with the court describing the fees and costs incurred in litigating this matter. Within fourteen (14) days of the filing of petitioner's declaration, respondent shall file a response

1  indicated whether it objects to the amount requested by
2  petitioner, and providing an explanation for the objection.
3  Thereafter, the matter of the amount of fees will stand
4  submitted.  The court's retention of jurisdiction to
5  determine fees in no way effects the parties' duty to
6  proceed with arbitration.
7  IT IS SO ORDERED.
8  DATED: December 9, 2010.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

19